171503 United States v. Alba Pena 171504 United States v. Adronis Rochford Mr. Sultan, good morning. Good morning, your honors. May I reserve one minute for rebuttal, please? Yes. May it please the court. Alba Pena was convicted of seven substantive counts of wire fraud for her participation in her mother's scheme to defraud undocumented immigrants. Her mother, Patria Zuniga, was a compelling, charismatic figure who persuaded numerous undocumented immigrants to give her money in exchange for false promises that she would provide them with residency documentation. Zuniga pled guilty, and at the trial of her two daughters, including Alba, Alba's lawyer, in opening statement, told the jury that Alba's mother had perpetrated a scheme to defraud, but that Alba had not acted with the specific intent to defraud. In short, her defense at trial was good faith. At trial, there was a parade of victims who testified as to what Patria Zuniga told them that persuaded them that she was going to help them, not rip them off. In her defense, Alba Pena took the stand and told the jury that she believed that her mother was helping these people, not stealing from them, but when her lawyer sought to elicit from her, under examination, what her mother had told her that led her to believe that her mother was going to help these people, the government objected over and over and over again, and the trial judge excluded the conversation, would not allow counsel to elicit from Alba what her mother said to her that led her to believe, in good faith, that her mother was helping these people. Mr. Sultan, I'm sorry, go ahead. Let's assume that Judge Hillman was in error and that there's no hearsay barred of conversations which are offered not for the truth of the matter asserted. Nonetheless, if, as we look at whether that's an error that you can pursue on appeal, we're hampered because we don't know what these conversations were because your client's trial, and Rule 103B, I submit, requires such an offer of proof, and that to me is the weakest point in your argument, so I'd like your response to that. I'm referring specifically to that. I understand 103B has two purposes. One purpose is to make sure that the district court is comprised of the purpose of the proffer of evidence, and that was complied with. The district court knew that these were offered to show state of mind, not for the truth of the matter asserted, but the language of 103B makes it clear that the rule is also intended to ensure that the district court is made aware of the substance of the proffer, not just the purpose, but the substance, and there was no proffer at all, no offer of proof at all, that would acquaint the district court with the substance of these conversations so that the district court, or this court, can make an intelligent judgment as to whether these conversations, were they admitted into evidence, might have had some bearing on the jury's ultimate determination of your client's state of mind and buss of her guilt. Well, I agree with your honor that there should have been an offer of proof, okay? I agree with that. However, let me say a few things in response. Number one, given the context, the primary purpose of rule 103, I submit, as well as the plain error rule, for that matter, is to avoid sandbagging. And clearly, the district court was not sandbagged. The counsel said, I'm putting, I'm offering this for, not for the truth, for state of mind, this is a...  Okay. So, I think that from the context, from the context of the whole case, frankly, and the rule is, you don't have to make an offer of proof if it's obvious from the context. No, that's as far as purpose is concerned, and that may be true as far as substance is concerned, but the substance of these conversations isn't apparent from the context. It's apparent that counsel thought that the substance of these conversations bore on state of mind, but we've got to make a judgment on an appellate record that contains not a shred of information about what might have been in these conversations. Well, your honor, I don't think that's exactly true. You have, frankly, testimony from a parade of victims who said exactly what she said to them to induce them to believe her, and I think it's fair to assume that she said things along the same line to her 19-year-old daughter. Now, it's true... We don't even know that these were conversations. We don't even know that these were conversations. We don't know that. I don't think it's fair to assume that at all. Well, she said she had numerous conversations with her mother, and she said based on those conversations, she believed her mother. I agree counsel should have given an offer of proof as to exactly what her mother said to her on each of these occasions. That would have been what she should have done, but it cannot be that an error of this magnitude, which goes to the heart of a good faith defense, basically eviscerated the good faith defense. The jury heard what Zuniga said to the victims to get them to believe her. They were not allowed to hear from the defendant what her mother said to her to get her to believe her. It eviscerated her defense. It can't be that that error is unreviewable because trial counsel didn't make a detailed offer of proof, and that's essentially what the government is arguing. No, no, no. Number one, the government isn't arguing that you should have made a detailed offer of proof. At least I'm not saying that. I'm saying there should have been some offer of proof, and no one is suggesting that it's unreviewable. It may very well be reviewable for plain error, but then you're up against the fact that you've got to meet the third prong of plain error, which is virtually impossible to do without any information as to the substance of the conversation. Which makes it unreviewable, and I submit it can't. It doesn't make it unreviewable. Well, it makes it unreviewable. From your point of view, that's different than being unreviewable. Did the district court in ruling against you suggest it was unaware of the substance of the conversations? Is there any indication that the district court in any way wasn't apprised of both the purpose and the substance of the evidence would be? Well, I think the district court just clearly misunderstood, relied on the government's objection, and clearly just misunderstood or misapplied the hearsay. Well, this is... Yeah, but I'm trying to figure out this. I think it would be potentially helpful to... Yes, Your Honor. So... I'm listening. Well, we'll see if it is. Did the government make an objection below that the substance wasn't being presented? In other words, I'm just trying to figure out what... You rightly say, look, the fundamental point of 103B is no sandbagging of the district court. If there is sandbagging, it makes all the sense in the world to apply plain error. You're not disputing that. You're saying essentially the district court had enough that it knew what it was doing when it made the ruling it made, such that if it made a wrong ruling on that, it should just be abuse of discretion. You wouldn't have to be subject to the plain error standard, right? I take that as your... Well, legal error is always an abuse of discretion. Legal error is always an abuse of discretion. Right, right. So, below, with respect to this issue of the substance of the conversations, as opposed to whether you were seeking it for state of mind, I think it was clear you were... It implied the district court that you wanted it in for state of mind. For counsel it did that, yeah. Yeah. With respect to the substance of the issue, did the government make any point to the district court that we don't even know what these conversations are about? No, Your Honor. They didn't argue that. They didn't argue relevance. They didn't argue duplicativeness. They just argued hearsay. That's it. And that was the basis for the erroneous... And what's the most detailed, and you can give us now, account of what was presented to the district court with respect to the substance of the evidence that they But only from the context of the examination. It was in the context of asking about certain subjects. For example, this person, Mr. Williams, who Zuniga talked about, that she worked for, it was in the context of that that Alba said that she had conversations with her mother about Mr. Williams. She had conversations with her mother about whether her mother was She had conversations with her mother about this money that was coming into their joint bank account and where it was from. So she did testify to the subject matter. Okay. So then what you say is since they gave the subject matter with whom she spoke, the people she spoke to, the subject matter about what they talked about, and then since she's saying I want in for state of mind, it would have been clear to the district court that what she was saying, the substance of those conversations would have been that the mother was apprising her that it was all on the up-and-up. I think that's close enough, Your Honor, although I agree with Judge Selya that there should have been a more specific proffer. I'm not I can't run away from that. But I think that given the fundamental nature of the error and given the overall context and given the lack of sandbagging, there was enough so that that should not be the basis to affirm such an egregious error, which had disserated this woman's entire trial defense. Can I ask you whether I'm not sure that I have the right facts. Was there any witness directly involving your client? Your Honor, there were several. That's why the second argument we make is that five of the seven counts, she should have gotten the judgment of acquittal because as to those five counts, they related to victims who said absolutely nothing about Alba Pena. The other two did mention Alba Pena, and we did not make a claim on appeal that there was insufficient evidence as to those two counts. Now, is there an issue of the positive monies in your client's account? There wasn't a positive money that went from one sister to the other sister's account. I submit that that's not enough to establish a knowing participation in those particular counts. The cases relied on by the government are cases where there was a Pinkerton instruction. Here, there was no Pinkerton instruction requested, none given. The judge instructed the jury they must consider the evidence separately on every count. There was no conspiracy charge, and on those specific counts, they simply didn't do enough to reach the bar of getting to the jury. Thank you. Thank you, Your Honor. Mr. Anguillo? Mr. Anguillo, I'm sorry. It's all right. May it please the Court, Attorney Leonardo Anguillo on behalf of Ms. Andronis Rocher. As pointed out by Attorney Sultan, this was a long case for me. It was a long case. As a result, 49 witnesses actually got called. It was a large case, and part of the breadth of it came from the fact that it seems like the government almost tried this as a conspiracy case, despite the fact that it was distinct charges outlined in the particular counts. And the fact that so much evidence was presented to the jury, and the fact that it was so difficult for counsel to keep everything straight, it was difficult to ask the jury to render a verdict in this case. And the fact that they came back with the questions that they did suggest showed that they were struggling. And that's why the specific unanimity instruction that was requested after question number 3 and question number 5 from the jury was so important. I think it's interesting that it's Judge And I think that probably the best way to divide these cases is that in Lee, unlike Lee, we're not talking about a stack of credit cards. And the jury was simply asked to decide, well, did they do something? Or which one of these did they possess? In this case, it's more like Newell, because we had this breadth of potential criminality. And the specific unanimity instruction would have asked them to properly assess where was the criminality. Suggest that these are not brute facts. I've been puzzled ever since I read your brief as to how a unanimity instruction fits. Unanimity instruction we often see in terms, say, of a conspiracy case where different separately with having committed discrete acts of wire fraud. And the jury is told that to find a defendant guilty of any one discrete act, the jury has to be unanimous as to the defendant's guilt. Now, what more did you want in terms of a unanimity charge? I think what we wanted was a chance for the jury to understand that it's not just being a criminal. There's a lot of evidence that came in here. No, no, but that doesn't answer my question. What did you want the judge to say to the jury that hadn't already been said in substance when the judge said each defendant is charged separately in each of these eight counts? You have to determine whether that particular defendant is guilty or not guilty on each of the eight counts. And you have to be unanimous in making that determination. What more should the judge have told the jury? To put it plainly, I think that the judge should have told the jury that they have to unanimously agree on what criminality. The jury is asked to decide, are you guilty or not guilty on count one, which charges wire fraud in the case of X? Are you talking about a unanimity instruction that requires them to specify the act of wire fraud that the individual defendant is alleged to have committed? Well, to take the context of counts three and seven, there's convictions for a John Doe wire fraud or a Jane Doe. So what the government was, I think, asking the jury to do was say, hey, listen, there's a lot of bad stuff happening here. Even though these particular counts didn't deal with my client's bank account, you should still convict her because she's a good person and she was in on the scheme as a whole. And when you're talking about the scheme as a whole, I think we have to get the separate unanimity instruction involved because... Unanimity as to what? As to where and when. Just like in Shad, we can't convict for assaulting X on Tuesday or Y on Wednesday. So in other words, the jury has to be unanimous on exactly what the defendant did to commit the crime? So it's, I'd suggest that, I think your question suggests the idea of brute facts. And I think when you look at a case like Richardson... I'm really curious, what language, did you give the district judge some language that you wanted Judge Hillman to give? Because if I were the trial judge and you just said to me you wanted a unanimity instruction, I would have said, well, I already gave the unanimity instruction and I'll repeat it to the jury. But did you request some specific language that Judge Hillman didn't give? I specifically requested a separate unanimity instruction and I suggest that when you go through the transcript, there's a conversation between myself and Judge Hillman where Judge Hillman specifically, we talked about the idea that he had considered the idea of specific unanimity and that he rejected it. Just practically speaking, take one of the counts that you just mentioned, three or seven. And there's a scheme is what you referred to, right? What are the component parts of the scheme that you wanted to be separately instructed on? Is it possible to articulate it? I think it's going to be difficult and I think it's going to be difficult because the case just does get... So what do you want to have happen? I want it to be present for the conversation with Higuera and that proves that... So how would the instruction go in your imagined idea? Would it be each conversation? I do see the difficulty there. I suppose this is a place for truthfulness. The places that I've always seen separate unanimity instructions would be in, say, a state-level criminal prosecution for sexual assault on a series of dates where you narrow down. That was sort of where I came at it from. And then I didn't know if I should speak on the restitution issue or if there's any other questions on the issue. I have some questions. Am I correct that several witnesses identified your client as being present at these meetings where this scheme was given to the victims? Yes, Your Honor. Yeah, that happened, but there was also serious credibility questions. Well, that's for the jury, isn't it? It is for the jury. And isn't it also the case that she was given money or deposits were made directly with her? Well, they didn't get made directly to her. I think the testimony was that information got provided. They used that information in part from Zuniga. There's some testimony that one of the alleged victims got a phone call and he wasn't really sure who it came from. But I think the most important point is they didn't convict her on all the counts. This was a split verdict, five counts conviction, one deadlock, two not guilties. And the idea I think that conveys is that they did not believe in principal liability here. And so it's important to know that they all came together in a decision on whether or not she participated in particular criminality. Well, what evidence was missing in the counts that they did find your client guilty of? So I think the biggest problem is that because we have the principal liability instruction, aiding and abetting instruction, as well as the willful blindness instruction, we don't really know how they got there. Well, if there was evidence in the record, does it make any difference? I think it does, because we'll take the John Doe counts, for example. It's more than just brute facts to say we think she did it. There's enough here. I think in this case we need the separate unanimity instruction to prevent her from being convicted on a where there's smoke, there's fire kind of theory, especially in the context of the John Doe indictments. Thank you. Thank you. Mr. Crum, good morning. And I'm going to start you off. Can you tell me the evidence you had in a brief statement against each of the defendants to prove their guilt? Evidence that all of them had been involved at various points in recruiting individuals. Each of them, and I won't try to put names to each of these, because there's a lot of victims and it would be difficult for me to summarize it, certainly to do so quickly. But there was that each of them had participated at least once in recruiting a victim into the scheme. That is, had told them that their mother could help them and had put them in a position to be in contact. Both defendants? Yes. There was evidence that both of them had received numerous payments, cash had been brought to them, had had phone calls with various victims to confirm payments or that the testimony was that they had confirmed payments. How would they know what that money was from? Well, there was testimony that they were at meetings in which their mother made the pitch and that they agreed with her in certain respects. For example, their mother would, there was one meeting again, I won't try to say which victim because I don't remember, where the mother was saying that she could do various things and Rochford was saying, yes, Mr. William can help with that, yes, you can send that to this other person. So they were adding sort of their own vouching for sort of the validity of what she was saying, which were arguments that they knew wasn't true. It's that last point, what's your evidence on that last point? Well, the evidence is that, among other things, that the money that was supposedly going to those people was used by them for personal purposes. There's extensive financial evidence, bank records, showing that the money was spent on personal expenses for them. And is that true through all the counts? I think that with respect to each defendant and each count, you can't necessarily connect all of them. Our argument, again, this goes to the sufficiency issue more broadly, is that the way that wire fraud works is you have to show no participation in the scheme and there's not a requirement of showing a connection to each specific transaction. The answer could be yes, but I just want to understand, if the evidence was that as to one victim, the money went into their personal account and they used it for personal purposes, would that be sufficient to make every count viable, even if there was no equivalent evidence as to all those other counts? Well, again, in our view, yes, as long as there was no argument and no argument was made of multiple schemes. And this goes to the question I think is sort of lurking underneath the argument they're making on the sufficiency count. It can be argued, as in the case of conspiracies, a defendant can make the argument that there, in fact, were multiple schemes, that they knowingly participated in some, but not all of that. But that is not what was argued here. It was argued below. It's not argued on appeal. And that's where Pena's argument on sufficiency really falls short, because essentially she's trying to pick and choose and say, you know, I joined the scheme, but not as to all victims. I'm not sure, our understanding is that wire fraud doesn't work that way. If you join the scheme and the scheme includes all those victims and all the wires, the use of wires is foreseeable within that scheme, then there at least is sufficient evidence to find that you are responsible for each of the wires. And the unit of prosecution is the wire, so that it is possible and proper to convict on that basis. We do point out that to the extent that some connection were needed with respect to particular victims, in this case you have it for Pena, the one who makes this argument. So basically it's an inferential story about her knowledge that the scheme was not on the up-and-up. There's certainly, we believe, a lot of information from what she participated in. She said that she knew where she was, to further answer Judge Shreya's question, another big important part of the sufficiency of the evidence argument, is that they knowingly said things that were not true. They covered for their mother. They said she was in Miami working on the cases when she wasn't, and that that was the kind of thing you wouldn't do unless you were a participant. But just from the jury's perspective, that makes all the more consequential the decision not to let her put forward the evidence about what her mother told her, about whether the scheme was on the up-and-up, right? Precisely. That's where I was going to turn next in my argument. As Your Honor is aware, it's our position, and we think it is supported by the record, strongly supported by the record, that this is unpreserved and has to be reviewed for plain error. And I want to correct what I think is sort of a misimpression left by defense counsel as to the question of what the district court would reasonably have understood. The argument of good faith was not made in the opening argument. The only argument made with respect to what the jury would hear about what Pena would believe was that she believed that she was, that Pena believed that her mother was helping her sister and brother. Not that she believed anything about her work with others, that she believed her mother was assisting people in getting immigration status, that that was something her mother knew how to do, or was good at, or was connected to. That did not appear in the opening argument. Nor was that apparent by the time that the district court was asked to make its ruling on the present sentence impression. If you look at the record, that came up in response to, I believe, the third or the fourth hearsay objection. The issue there was whether Pena had overheard a conversation involving Morales, another person, and her mother. It was not focused on her mother's statements. And there was no suggestion that, it was argued that this was, you know, being offered for present sentence impression, but no argument as to what it was supposed to be present sentence impression about. When you said it came up on the third or fourth hearsay, that means it came up? No, again, Judge Selleck has, I think, laid it out the way we understand it. The rationale for introducing the testimony was made. We're not disputing that. We're arguing that the substance was not there. You said something came up on the third or fourth one. What came up on the third or fourth one? The hearsay objection, and then the defense called for a sidebar. This is the first time the defense counsel articulated it. And again, Judge Selleck has acknowledged, and we agreed, that a statement was made as to the basis for admissibility, present sentence impression. But there was no explanation made of the substance of the testimony, and the substance on the table at that point had nothing to do with the mother's statements. But in fairness, the district court didn't ask about the substance. The district court's immediate response was one line, all right, he said hearsay sustained. That's essentially what the district court said, despite the fact that the proffer was specifically not for the truth of the matter asserted. Well, the court did also say, and without any objection or response, that I don't think you need the conversations to convey the effect on the hearer. And again, there was no response to that. I understand the rule is that the defendant has to build the record, has to make the proffer, has to apprise the district court of where the district court has gone wrong. The district court's belief, and interestingly enough, in that same conversation, the district court then says that its real concern with the particular question on the table, at which time the sidebar was called, was with the defendant's use of the word comfortable in asking the question. The district court clearly was not aware of what the argument was being made as to what this was for, whose statements were being introduced. It wasn't clear whether it was Morales's or the mother's. And so again, I don't think it's fair to say the district court had any sense of the purpose or substance or nature of the testimony at that point. It knew the purpose, because it knew it was offered for state of mind, and it knew it was not offered for the truth of the matter asserted. Substance may be arguable, but purpose is scarcely arguable. Well, again, it wasn't raised for the point of good faith for life, which is different from the state of mind in other respects. There were several intents the government had to prove, whether there was knowledge of this scheme, intent to defraud. You're saying it was clear that it was for state of mind, but it wasn't clear state of mind as to what? As to what issue? Again, because we're talking about, I think one friend put it in context, that this was a conversation that she was saying she overheard between her mother and someone else. So it's not, the argument made on appeal is that there were particular statements of her mother. Are you saying that it wasn't clear what the state of mind was or that it was clear what it was being offered for as a state of mind, but it was a different state of mind than now is being asserted? Well, I'm saying both. I'm saying that it was saying that it was not specified whatsoever below, and to the extent that... You said that in the opening argument, the argument was that he was doing this for her sister. Right. Well, this again... And that was clear all the way through, and so then they shifted gears. That suggests that he did know what it was being used for. No, I'm not... I'm just not following. Well, there was no... The opening argument didn't suggest that the defendant would testify at all. It did not say anything about statements of the mother. I'm just trying to say that to the extent that the argument is being raised, that there was an inference that district court could have made as to what it was being asked to admit. It was a moving target, and it was an unclear one to begin with. And you say there is some indication that the district court based its hearsay ruling on the fact that it was a moving target and it was unclear? Well, it's clear that the district court did not understand... When it says that it was ruling on the basis that it thought that it could be brought in equally well without reference to specific conversations, it heard no objection to that. When it said that it objected to the particular question, it was sustaining an objection on the basis of the word comfortable, which is not really a hearsay basis, but a form basis. I'm saying that the district court at that point did not know... How could the first thing be true? How could it have been brought in equally well without reference to specific conversations? When the thing you want to put forward is what my mother said to me. Well, again, it's the district court's ruling, and the district court may, again, betray the district court to not know what the defendant was trying to get across. Again, we're talking about a conversation that was overheard. That was the question on the table. It was simply the court that thought that was simply a matter of general awareness of what was going on in her household and not directly relevant, and just did not perceive the reason why that would particularly need to be stated in precise words. Again, this is all within the context of saying, what could the district court reasonably have known at the time you made its ruling? Just so I get it clear, if we did not apply plain error, are you making an argument that you still win? We are. And how does that argument go? Well, the argument is essentially there was... One point is worth pointing out. It points to 22 objections or 26 objections, most of which were upheld. The vast majority of those were to questions about specific what you could call directions. Why did you put the money in this account my mother told me to? Why did you call this person on this date my mother told me to? That, defense counsel admits, came in on cross, and it came in on redirect, and it's not really before us now. So what we're talking about is a much smaller number of questions. No, we don't know what we're talking about, because once the defendant is told that it can't get into conversations, because that's hearsay even if offered not for the truth of the matter asserted, we don't know on this record what conversations the defendant might have proffered had it not been for that erroneous ruling. Yes, but then we come right back to the purpose of the requirement of a proffer, and that is a case that I just cite now because this is the issue that Your Honor is raising. It goes from a few years back, and I will submit it in 20HA, Rodriguez v. Banco Central Corporation from 1992, and it says specifically that under the rules, there can be no reversible error on a ground without a showing of prejudice, and no showing of prejudice without a proffer. And that's the problem we have here, is that without the proffer, we can't say anything more than that what the evidence would have been is exactly what was offered to the impressions, but simply in the mother's words. That's the most we can say, because nothing more was ever given to the district court. I thought my mother was helping people because my mother said she helps people. In our view, that is harmless, because we know no more than that. Then the exclusion of that can't be anything other than harmless, given the very strong evidence of participation in the scheme, and that includes evidence such as the fact that on cross-examination pages, she lied to people on her mother's behalf. Why couldn't we just, I mean, just taking that, is there a basis for concluding at least that they were representing the mother was going to say, I was doing this just to help people? Well, no, in our view, this doesn't meet the standard of a proffer at all, because it has to be clear from the record what the substance of this text is. Your Honor asked me a specific question. Assuming you don't find it to be plain error, you find it pre-preserved, then we're still stuck with the problem of the record we have. And in order to show that there's some harm, we need to have some idea of what occurred, and we have nothing. We have no way of knowing that anything would have been added to the record we have. You couldn't even draw from this record the conclusion that she was representing, that the mother told her that she was doing this just to help people. That wouldn't even be a plausible thing? Again, our view is that that is not enough. A proffer requirement is more than to just intuit the mere subject matter of the testimony. It's not the subject matter. It is. It's the subject matter plus. The subject matter is we talked about whether the scheme was on the up-and-up. Couldn't you infer here that she was representing that the mother was, if you let me put it in the conversation, what you would find out is that I was going to say the mother told me it was on the up-and-up. That's not subject matter. Okay. If one wants to draw that distinction, I would direct this court to the decision in the Bulger case. I have a petition I can, again, submit. But in a footnote on one of the issues that was raised at trial regarding Mr. Bulger's attempt to bring in an immunity defense, the court noted that all that had been offered was the bare statement that he would offer that he had been given immunity. Well, that's like he would say what the mother said. The mother would say, I was doing good things for people. And that was found to be insufficient because it didn't give any basis for crediting or understanding what that would have been. Mr. Crumb, how does that cut? If we assume that this is a preserved error, all right, because there's a hearsay objection, the hearsay objection should have been overruled when the limitation was offered by the proponent, not for the truth of the matter asserted. If we say there was enough here to preserve the error, then it's the government's burden to show that the error did not affect substantial rights. Right. And the government can't possibly do it on this record without any evidence as to the conversations. Well, I think this goes to show why this needs to be a plain error review. Because if the court can't review it because the substance is necessary to the decision, then that's exactly the reason why preservation is not offered as needed. Why wouldn't we just look at it slightly differently, which is if you could infer that at least what was being represented was that she was going to say that my mother told me it was all fine, you might say, yeah, but then you look at all the other evidence, and given all the other evidence, on some records, all the other evidence will be enough to say that bare self-serving statement isn't going to be enough. And, Your Honor, that's exactly what we argue in our brief. We argue that it is not preserved, but that it would be harmless under any standard. On precisely that argument, that at most what this record tells us, the only thing we can glean from this record, and we are stuck with this record, is that the testimony at most would have done no more than restate in the mother's words, I believe she was doing it on the up and up because she said she was. And that coupled with all the evidence, the money she spent, the ways that Pena particularly was involved directly in talking to people, telling people that she was going to continue her mother's work because she was studying to be an immigration prosecutor, well, that was not the case. That all of that evidence, her multiple conflicting stories to investigators, that there was enough evidence to find that bare statement, as Your Honor characterized it, harmless. And that that's all we can do on this record, because if we're going to find anything preserved, that's all we can find preserved. Thank you. Thank you, Your Honor. I have just two points to make, if I can. First, I don't think the government has correctly characterized the opening statement, which is quoted on page 23 of my brief. This is from the lawyer's opening. Alba Pena is 19 years old. She's a young woman who is a friend who is in need. How could she let this thing happen? My client believes her mother was in the process of getting papers for injurious Rochefort, her sister, and Ronnie Gennaio, her brother. Her mother supposedly was getting papers for them. These are her siblings. So when her mother says, I can help Morales, one of the victims, why would my client disbelieve her? She can help her siblings. That's good faith. That's what she's arguing. She's arguing from the opening. She's arguing throughout the case. That's point number one. Point number two. Look, this is not, I don't need to tell you, Your Honors, this is not a game. The government kept this evidence out of trial. They kept it out of trial by making 27 frivolous objections, which they should have well known that this wasn't hearsay. Of course, it's not hearsay. It's not offered for the truth. It's offered for state of mind. They just finished asking 30 witnesses about the same stuff. What did Patria Zuniga tell you that led you to believe she was going to help you? But when the defendant, to help herself, to put on her defense, tries to put the same evidence before the jury, the government objects. Judge Hillman sustains their objections, and now they say, ha-ha, this isn't in the record, so guess what, defendant? You lose on appeal. Can you just address the last issue I just discussed with your opponent about whether, if and if we agree with you and we apply a visa discretion standard, whether given what we have before us about the content of those communications that she was going to testify about, in light of all the other evidence in the record, whether there would be prejudice? Yes, Your Honor, because, I mean, all the jury heard was a conclusory statement. I believe the mom, and they had no way of assessing that defense because they didn't have the basis for it. They didn't have the substance of what that defense was based on. We don't know the jury would have believed her, but we can certainly say there's at least a reasonable probability that given that she was able to lull all these victims, that she could have equally been able to lull her own 19-year-old daughter. And that's essentially, if there's a reasonable probability that the jury would have at least had a reasonable doubt as to whether or not that is the case, then even under the plain error standard, that's prong three. So I don't think there should be plain error because I don't think the judge was sandbagged and there was plenty of the judge enough information as to what this evidence was. But even under the plain error standard, I submit this court cannot let this egregious error, which went to the, this was her only defense. This was it. And it was taken away from her by frivolous objections by the government, which unfortunately were sustained over and over and over again. And I laid it out in the brief all the time. The defense lawyer kept trying to put this stuff in. And the judge kept saying, no compensations, sustained. And eventually, that was it. It didn't come in. The jury never heard it. And this defendant never had a fair opportunity to present her defense. And she was deprived of a fair trial. It's as simple as that. Thank the court.